IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AUTO-OWNERS INSURANCE
COMPANY,

    Plaintiff,

      v.

THE UNIT OWNERS
ASSOCIATION OF RIVERVIEW
OVERLOOK CONDOMINIUM,
INC., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-3012-TWT

## OPINION AND ORDER

This is a declaratory judgment action regarding an insurance coverage dispute. It is before the Court on the Plaintiff Auto-Owners Insurance Company's Motion for Summary Judgment Against All Defendants [Doc. 51], the Defendants Wanda Galante and P.D.Q. Property Management's Cross-Motion for Summary Judgment Against Plaintiff [Doc. 59], and the Motion to Strike Defendants Wanda Galante and P.D.Q. Property Management, Inc.'s Motion for Summary Judgment [Doc. 60]. For the reasons stated below, the Plaintiff's Motion for Summary Judgment is GRANTED. The Defendants' Cross-Motion for Summary Judgment is DENIED and the Motion to Strike is DENIED as moot.

T:\ORDERS\13\Auto-Owners Insurance\msjtwt.wpd

## I. Background

On November 15, 2006, the Defendant The Unit Owners Association of Riverview Overlook Condominium, Inc. ("Overlook") entered into a contract entitled the "Exclusive Management Agreement" (the "Agreement") with Wanda Galante and P.D.Q. Property Management (collectively, "the PDQ Defendants").[1] The Agreement concerned management responsibilities at the Riverview Overlook Condominiums ("the Property").[2] The Agreement gave the PDQ Defendants the authority "[t]o hire, discharge and supervise all contractors . . . and/or employees required for the operation and maintenance of the Property" as well as authority to contract with others to repair and maintain the Property.[3] It further provided that the PDQ Defendants would receive a flat fee each month for managing the Property, as well as a percentage of the cost of all renovation projects.[4] The PDQ Defendants were responsible for getting quotes, managing renovation work, and inspecting that work.[5]

---

[1]     Pl.'s Statement of Facts ¶ 1.

[2]     Id.

[3]     Id. ¶ 3.

[4]     Id. ¶ 4.

[5]     Id.

On April 1, 2011, Overlook terminated the Agreement with the PDQ Defendants.[6] Subsequently, on April 20, 2011, Overlook filed a lawsuit against the PDQ Defendants in the Superior Court of Cobb County, Georgia (the "Underlying Lawsuit" or the "Underlying Complaint").[7] The Underlying Complaint alleges four claims against the PDQ Defendants: breach of the Agreement, breach of contract, negligent construction, and conversion.[8] These counts allege that the PDQ Defendants caused harm to Overlook and to the Property through their management and renovation of the Property.

The PDQ Defendants have a business-owners insurance policy issued by the Plaintiff, Auto-Owners Insurance Company, which was effective at all relevant times.[9] The policy covers "bodily injury" or "property damage" caused by an "occurrence."[10] It excludes from coverage any damages "due to rendering or failure to render any professional service."[11] Auto-Owners is defending the PDQ Defendants in the

---

[6]     Id. ¶ 5.

[7]     Id. ¶ 6.

[8]     Id. ¶ 7.

[9]     Id. ¶ 11.

[10]    Pl. Auto-Owners Ins. Co.'s Br. in Supp. of its Mot. for Summ. J., at 4.

[11]    Id. at 5.

Underlying Lawsuit subject to a reservation of rights.[12] It filed this declaratory judgment action on September 10, 2013, seeking a judgment that it has no duty to defend or indemnify the PDQ Defendants.[13] Auto-Owners now moves for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[14] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[15] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[16] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[17] "A mere 'scintilla' of evidence

---

[12]    Def.'s Statement of Facts ¶ 12.

[13]    Id. ¶ 13.

[14]    FED. R. CIV. P. 56(c).

[15]    Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[16]    Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[17]    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[18]

## III. Discussion

Auto-Owners moves for summary judgment on the ground that it has no duty to defend or indemnify the PDQ Defendants under the insurance policy. As a general matter, if there is no duty to defend, there is no duty to indemnify.[19] This Court will first address whether Auto-Owners has a duty to defend. An insurer must defend its insured against any claim that potentially falls within the scope of its policy.[20] The court looks "to the allegations of the complaint to determine whether a claim covered by the policy is asserted."[21] If the complaint is even arguably covered by the policy, there is a duty to defend.[22]

---

[18]   Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

[19]   See, e.g., Shafe v. American States Ins. Co., 288 Ga. App. 315, 317 (2007) ("[A]n insurer's duty to defend is broader than its duty to indemnify."); Allstate Ins. Co. v. Harkleroad, No. 409CV011, 2010 WL 2076941, at *3 (S.D. Ga. May 24, 2010) ("However, if it is found that Allstate does not have a duty to defend on a claim, it will likewise not be required to indemnify the insureds if they are ultimately held liable for that claim.").

[20]   Shafe, 288 Ga. App. at 317.

[21]   Nationwide Mut. Fire Ins. Co. v. Somers, 264 Ga. App. 421, 424 (2003).

[22]   Id.

The Underlying Complaint asserts four claims against the PDQ Defendants: breach of the Agreement, breach of contract with respect to the construction work, negligent construction, and conversion.[23] First, the PDQ Defendants concede that the counts for breach of the Agreement and conversion would not be covered under the policy if filed alone.[24] Auto-Owners would, however, still be required to defend against those two claims if the breach of contract or negligent construction claims were within the policy.[25] The Court therefore turns to those two claims.

Here, the policy covers "property damage" caused by an "occurrence." Under the policy, an occurrence is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[26] An occurrence does not require damage to property other than that of the insured.[27] Faulty workmanship alone

---

[23]    Pl.'s Compl., Ex. A.

[24]    Defs. Wanda Galante & P.D.Q. Prop. Mgmt.'s Br. in Opp'n to Auto-Owners Ins. Co.'s Mot. for Summ. J. & in Supp. of Their Cross-Mot. for Summ. J., at 8 n.2.

[25]    HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc., 701 F.3d 662, 666 (11th Cir. 2012) ("[W]here an insurer has a duty to defend a single claim the complaint presents, it has a duty to defend all the claims asserted.").

[26]    Pl. Auto-Owners Ins. Co.'s Br. in Supp. of its Mot. for Summ. J., at 5.

[27]    Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co., 293 Ga. 456, 460 (2013).

may therefore constitute an occurrence.[28] Property damage is defined under the policy as physical injury to tangible property, including resulting loss of use, or loss of use of tangible property, even without any physical injury.[29] Where faulty workmanship is at issue, however, "property damage" may only be found where "the faulty workmanship causes physical injury to, or the loss of use of, nondefective property or work."[30] The Underlying Complaint here alleges that defects in the PDQ Defendants' work have caused damage to the common areas of the property.[31] Overlook has alleged both faulty workmanship, which is enough to constitute an occurrence, and damage to nondefective property, which is enough for property damage. It is at least arguable, therefore, that the underlying claims fall within the main policy coverage.

Nevertheless, the policy contains an exclusion for any damages caused while rendering professional services.[32] Professional services include "[s]upervisory,

---

[28]    Id.

[29]    Pl. Auto-Owners Ins. Co.'s Br. in Supp. of its Mot. for Summ. J., at 5.

[30]    Taylor Morrison Servs., 293 Ga. at 467.

[31]    Pl.'s Compl., Ex. A, ¶ 11.

[32]    Pl. Auto-Owners Ins. Co.'s Br. in Supp. of its Mot. for Summ. J., at 5.

inspection, or engineering services."[33] To fall under this exclusion, "the task must arise out of the acts specific to the individual's specialized knowledge or training."[34] But the inquiry is not whether the professional *did* rely upon his knowledge, experience, and training, it is whether he *should have*.[35] The Georgia Court of Appeals has held that where contractors were responsible for "supervising activities on the site to ensure that the work was performed safely, properly, and timely," their work fell within the professional services exclusion of a similar insurance policy.[36] Further, where allegations relate to a contractor failing to render services as a construction manager, they fall within the professional services exclusion.[37]

The PDQ Defendants contend that they were not acting in a supervisory capacity or as general contractor.[38] In fact, they offer affidavits to that effect.[39] Those

---

[33]     Id.

[34]     Auto-Owners Ins. Co. v. State Farm Fire & Cas. Co., 297 Ga. App. 751, 756 (2009).

[35]     Id. at 757.

[36]     Id. at 756-57.

[37]     Batson-Cook Co. v. Aetna Ins. Co., 200 Ga. App. 571, 573 (1991).

[38]     Defs. Wanda Galante & P.D.Q. Prop. Mgmt.'s Br. in Opp'n to Auto-Owners Ins. Co.'s Mot. for Summ. J. & in Supp. of Their Cross-Mot. for Summ. J., at 6-7.

[39]     Id.

claims and affidavits are not material. In determining whether Auto-Owners has a duty to defend, this Court looks not to affidavits from the insured, but to the allegations in the underlying complaint. Here, the Underlying Complaint alleges that the PDQ Defendants served as the general contractor with respect to the construction work.[40] Specifically, the Underlying Complaint alleges that the PDQ Defendants were required "to ensure that the Construction Work was completed in a good and workmanlike manner and free of all defects."[41] Additionally, it alleges that the PDQ Defendants breached an actual or implied contract relating to the construction work.[42] The allegations in the Underlying Complaint are that the PDQ Defendants were acting in a supervisory capacity and using special construction knowledge to ensure the safety and quality of the work. The Underlying Lawsuit does not allege any covered activity because the claims fall within the professional services exclusion.

Because Auto-Owners has no duty to defend, the PDQ Defendants' claims for bad faith and attorney's fees necessarily fail. Additionally, the PDQ Defendants' Cross-Motion for Summary Judgment should be denied. And the Motion to Strike is now moot.

---

[40]   Pl.'s Compl., Ex. A, ¶¶ 11, 34.

[41]   Id., Ex. A, ¶ 35.

[42]   Id., Ex. A, ¶ 30.

## IV. Conclusion

For these reasons, the Court GRANTS the Plaintiff Auto-Owners Insurance Company's Motion for Summary Judgment Against All Defendants [Doc. 51]. The Court DENIES the Defendants Wanda Galante and P.D.Q. Property Management's Cross-Motion for Summary Judgment Against Plaintiff [Doc. 59] and the  Motion to Strike Defendants Wanda Galante and P.D.Q. Property Management, Inc.'s Motion for Summary Judgment [Doc. 60].

SO ORDERED, this 23 day of October, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge